NATHAN JONES *vs.* LEWIS RICHARDSON.

A mortgage of goods which the mortgagor does not own when the mortgage is made, though he afterwards acquires them, is void as against his attaching creditors.

On the question of the validity of a mortgage of goods which the mortgagor did not own until after the mortgage was made, evidence that the mortgagee took possession of the goods, for the purpose of foreclosing the mortgage, is irrelevant and inadmissible.

In an action on an agreement, in which the defendant acknowledged that he had received of the plaintiff certain enumerated goods, attached by the plaintiff as a deputy sheriff, estimated at $1500, and which the defendant promised to keep safely, and deliver to the plaintiff on demand, it was *held,* that the defendant could not give evidence that the goods were of less value than $1500, but that the valuation in the receipt was conclusive upon him.

A mortgagee of goods of the value of $1500 only, which were attached, made a demand on the attaching officer, in these terms: " Be it known to you that I have a mortgage on the goods and property which A. R. has put in my keeping, to the amount of $2000 and interest. I hereby demand the same sum of you, to be paid within the time specified by law; as you have attached said property." *Held,* that this demand and statement were sufficient, within the Rev. Sts. *c.* 90, § 79, at least for the sum of $2000.

ASSUMPSIT on the receipt and promise set forth in the award hereinafter stated. The action was referred to an arbitrator, under a rule of court which contained this provision: "He shall, at the request of either party, state in explicit terms, upon the face of his award, the exact evidence and facts in respect whereof either of the said parties shall think fit to state or raise any legal objection or question, whether upon the admissibility or competency of any evidence or witness, or upon any question of law. The case is to be heard and determined upon the principles which should govern a court and jury." The arbitrator's award was as follows: " The subscriber, named as referee in the foregoing rule, met the parties thereto, by their counsel, on the 3d of July 1845, at Boston. The plaintiff gave in evidence, to support the demand made by him on the defendant, the following written instrument: ' Norfolk, ss. Sept. 9th 1842. Received of Nathan Jones, deputy sheriff for the county of Norfolk, the personal property contained in the schedule hereafter written, which were this day attached by said Jones as the property of Addison Richardson, at the suit

of E. Wasson, Henry Peirce, Rufus Clements, and on several other writs *vs.* said Richardson and others; the writs being returnable at the next court of common pleas at Boston, in the county of Suffolk, on the first Tuesday of October next; and having received of said Jones one dollar in full for my services, I do promise to keep said goods safely, and deliver the same to said Jones, in good order, on demand.

" ' SCHEDULE. The whole of the remainder of said Richardson's stock in trade now in said Lewis Richardson's house, consisting of broadcloths, other woollen goods, cotton goods, crockery ware, hardware, silk goods, and all other goods of every description, which were removed to my place by said Addison Richardson. Said goods are contained in several boxes, except the crockery ware, estimated at the value of fifteen hundred dollars.                    Lewis Richardson.'

" The plaintiff also gave evidence, and it was admitted by the defendant, that he demanded a delivery by the defendant of the abovementioned goods, in the month of June 1843, and that the defendant refused to deliver them. The defendant offered to prove, and the plaintiff admitted, that when the action which is the subject of this reference was commenced, the suits on which said goods were attached were not disposed of, but were pending in court; and the defendant thereupon objected, that this action was prematurely brought and could not be maintained. The subscriber deemed this objection groundless.

" The defendant then gave in evidence the following mortgage to him, which was recorded by the clerk of the town of Medway, on the 7th of September 1842: ' Know all men by these presents, that I, Addison Richardson, of Medway, in the county of Norfolk and Commonwealth of Massachusetts, in consideration of two thousand dollars, to me in hand paid by Lewis Richardson, of said Medway, the receipt whereof is hereby acknowledged, do hereby bargain and sell unto the said Lewis the following personal property, viz. the whole stock in trade of said Addison, as well as each and every article of merchandize which the said Addison this day

bought of Timothy Walker, being in a store formerly kept by
said Walker in said Medway, as every other article constitut-
ing the said Addison's stock in trade, in the shape the same
is and may become in the usual course of the said Addison's
trade and business as a trader. To have and to hold the same
to the said Lewis, as his own proper goods and chattels. The
condition of the above sale is this : If the said Addison pay
the said Lewis a note of hand, this day given by him, for two
thousand dollars, and interest thereon, then this shall be void ;
otherwise, to remain in full force. In witness whereof I the
said Addison have set my hand and seal this seventh day of
October, A. D. 1840.          Addison Richardson.' (seal.)

" It was stated by the plaintiff and admitted by the defend-
ant, that the goods, which are the subject of this reference,
were formerly the stock in trade of said Addison Richardson,
but that only a part of them was owned by him until after he
made said mortgage.

" The plaintiff did not deny that the note of two thousand
dollars mentioned in said mortgage was justly due from said
Addison to the said Lewis, and was wholly unpaid. But the
plaintiff insisted that said mortgage was, on the face of it,
fraudulent, and wholly void as against other creditors of said
Addison, or, if not wholly void, that it was void as to all the
goods which were not a part of said Addison's stock in trade
when the mortgage was executed. The defendant thereupon
offered to introduce evidence that he had taken possession of
all the goods, which are the subject of this reference, before
they were attached by the plaintiff, for the purpose of fore-
closing the mortgage. But the subscriber, deeming such evi-
dence irrelevant, refused to receive it. He also was of opinion
that the mortgage was valid as to all the goods which were
attached by the plaintiff. The defendant then proposed to
give evidence that the true value of the goods which were
attached was much less than fifteen hundred dollars ; but the
subscriber, being of opinion that the defendant was answer
able to the plaintiff, if at all, for the sum at which the goods
were estimated in the defendant's receipt, refused to receive
such evidence.

" The defendant next insisted, that by the true construc-
tion of the defendant's receipt, taken in connexion with said
mortgage, the plaintiff attached only so much of the mortgaged
property as should be found to remain after payment there-
from of the debt for which it was mortgaged, to wit, the
mortgagor's right in equity to redeem said property.  But the
subscriber was of opinion, that the plaintiff neither did nor
could make such an attachment, and that the whole property
in said goods was attached by him, and was included in the
receipt given to him by the defendant.

" The defendant then gave in evidence a written demand,
delivered by him to the plaintiff, after said attachment was
made and said receipt given, but on the same day, of the fol-
lowing tenor :   ' Be it known to you that I, the subscriber,
have a mortgage on the goods and property which Addison
Richardson has put in my keeping, to the amount of two
thousand dollars and interest.   I hereby demand the same
sum of you, to be paid within the time specified by law, as
you have attached said property.        Lewis Richardson.
    September 9th 1842.'

" It was admitted by the plaintiff that he had paid nothing
to the defendant after said demand ; but he denied that said
demand, and his omission to pay any thing to the defendant,
were sufficient in law to dissolve the attachment.   The sub-
scriber was of opinion that the defendant was entitled by law
to defend this action under his mortgage, and that the said de-
mand, made on the plaintiff by the defendant, was good and
sufficient, at least for the sum of two thousand dollars, which
exceeds the value of the goods attached, as estimated by the
parties.   The subscriber, therefore, on the foregoing state-
ment, is of opinion, and accordingly awards, subject to the
opinion of the court to which this award is returnable, that
the plaintiff has no cause of action against the defendant, and
that the defendant recover of the plaintiff costs of court, to be
taxed by the court, and also the costs of reference.

                                    Theron Metcalf."

    *G. M. Brown,* for the plaintiff.  The mortgage was fraudu-

lent and void as to the mortgagor's creditors. There was no proper description or schedule of the property ; no price was stated ; and it was long concealed, that is, was not recorded until within two days of the attachment. *Robbins* v. *Parker*, 3 Met. 117. The case of *Briggs* v. *Parkman*, 2 Met. 258, which may be cited for the defendant, was between the mortgagor and the assignee of the mortgagee, under the insolvent law, and does not apply to the present case ; and *Jones* v. *Huggeford*, 3 Met. 515, was decided on the authority of *Briggs* v. *Parkman*. In neither case was the distinction taken between mortgagees and creditors, and mortgagees and assignees of mortgagors. See *Wood* v. *Lowry*, 17 Wend. 492. *Divver* v. *McLaughlin*, 2 Wend. 600. At any rate the mortgage is void as to all the goods bought by the mortgagor after it was made. *Winslow* v. *Merchants Ins. Co.* 4 Met. 315. *Goodenow* v. *Dunn*, 8 Shepley, 86. *Bonsey* v. *Amee*, 8 Pick. 236. *Laidler* v. *Burlinson*, 2 Mees. & Welsb. 602. *Robinson* v. *Macdonnell*, 5 M. & S. 228. In 2 & 3 Met. *ubi sup.* no question was raised as to the property bought subsequently to the execution of the mortgage. The case of *Macomber* v. *Parker*, 14 Pick. 497, contains some *obiter dicta* on which the defendant will rely. That was a case between mortgagor and mortgagee, and the question whether the mortgage was void as to creditors was not made. In *Mitchell* v. *Winslow*, 2 Story R. 630, which will be pressed by the defendant, the question was between the mortgagee and the mortgagor's assignees in bankruptcy ; and the decision was made on the ground of an equitable lien. The present defendant has not even such a lien.

The demand made by the defendant on the plaintiff was not sufficient. *Johnson* v. *Sumner*, 1 Met. 172. *Moriarty* v. *Lovejoy*, 23 Pick. 321. *Simonds* v. *Parker*, 3 Met. 144.

The valuation in the receipt is conclusive on the defendant. *Wakefield* v. *Stedman*, 12 Pick. 562. *Drown* v. *Smith*, 3 N. Hamp. 299.

*Richardson & Lovering*, for the defendant. The mortgage was not fraudulent as to creditors, nor void, for any

41 *

reason, as to the goods bought afterwards by the mortgagor as his "stock in trade." *Macomber* v. *Parker*, 14 Pick. 497. *Briggs* v. *Parkman*, 2 Met. 258. *Jones* v. *Huggeford*, 3 Met 515. *Mitchell* v. *Winslow*, 2 Story R. 630. *Abbott* v. *Goodwin*, 7 Shepley, 408. Cross on Lien, Appx. 408. *Fletcher* v. *Morey*, 2 Story R. 555. *Tapfield* v. *Hillman*, 6 Man. & Grang. 245, and 6 Scott N. R. 967. The case of *Robbins* v. *Parker*, 3 Met. 117, was a mortgage of perishable property, and was obviously intended to hinder creditors. When subsequently acquired goods are the proceeds of those that are mortgaged, as by shifting, &c. they are covered by a mortgage specially including them. But it is otherwise, when subsequently acquired property cannot proceed from, or be substituted for, that which is mortgaged. This distinction reconciles all the decisions of this court.

This case is analogous to that of a covenant to leave manure on leased land, at the end of the term; and to the hypothecation of a cargo of oil to be procured; and to an insurance of goods, though constantly shifting. Yet all these are held valid.

The case of *Winslow* v. *Merchants Ins. Co.* cited for the plaintiff, was between two mortgagees, the second having no notice of the first. There was also a provision for further conveyance to the first mortgagee.

The demand on the plaintiff by the defendant is shown to be sufficient, to the extent at least of $2000, by the cases cited for the plaintiff. See also *Legate* v. *Potter*, 1 Met. 325. *Klock* v. *Cronkhite*, 1 Hill's (N. Y.) Rep. 110.

The mortgaged property, if not held by the mortgage, may be regarded as a pledge, after the defendant took possession of it; and the evidence of his possession should have been admitted.

*Brown*, in reply. The defendant now raises a question, for the first time, as to a pledge. But it cannot avail him, for the case shows that he offered to prove that he took possession for the purpose of foreclosing the mortgage, and not for the purpose of holding the property as a pledge.

In *Tapfield* v. *Hillman*, there was no decision of the point to which it has been cited.

The decision was made at October term 1846.

WILDE, J.   This case, at a former term, was referred to the determination of an arbitrator, who was required, at the request of either party, to state the evidence and facts, in respect whereof either of the parties should think fit to raise any legal question.   In pursuance of this reference, a hearing of the parties has been had before the arbitrator, and the case comes before us on his report.

At the hearing, it appeared in evidence, that the plaintiff claimed the property in question between the parties, by virtue of an attachment thereof as the property of one Addison Richardson, and that the defendant claimed the same under a mortgage to him from the said Addison, made and recorded before the said attachment ; and the principal question submitted to the court by the arbitrator is, whether the said mortgage is valid against the creditors of the mortgagor.

The property mortgaged is thus described in the deed : "The whole stock in trade of said Addison, as well as each and every article of merchandize which the said Addison this day bought of Timothy Walker, as every other article constituting the said Addison's stock in trade, in the shape the same is and *may become* in the usual course of the said Addison's trade and business as a trader."   And it was admitted that the goods in question were, at the time of the attachment, the stock in trade of the said Addison, but that only a part of them was owned by him until after he made the said mortgage.

It has been contended by the plaintiff's counsel, that the mortgage was in law fraudulent and void against *bonâ fide* attaching creditors ; or if not wholly void, that it was void as to all the goods which were not a part of the mortgagor's stock in trade when the mortgage was executed.   There seems to us to be no ground for the argument that this mortgage was wholly void, as being fraudulent on the face of it, or as having been made with an intent to defraud the creditors of the

mortgagor.   It was not denied that the mortgage was given
to secure a large debt due from the mortgagor to the mort-
gagee; and no evidence was introduced at the hearing, tend-
ing to prove that the mortgage was not made *bonâ fide.*   The
question therefore is reduced to this, namely, whether the
defendant has acquired any valid title, under the mortgage, to
the goods purchased by the mortgagor subsequently to the
mortgage.

   That a person cannot grant or mortgage property,. of which
he is not possessed, and to which he has no title, is a maxim
of the law too plain to need illustration, and which is fully
supported by all the authorities.   Perkins, § 65, says, it is a
common learning in the law, that a man cannot grant or charge
that which he hath not.   Bac. Ab. Grants, D. 2. Com. Dig.
Grant, D.   It is true that a person may grant personal prop-
erty of which he is potentially, though not actually possessed.
A man may therefore grant all the wool that shall grow on
the sheep which he owns at the time of the grant, but not the
wool which shall grow on sheep not his, but which he after-
wards may buy.   So a parson of a church may grant his
ithes for years, for although they are not actually in him at
the time, yet they are potentially; and the same exception to
·the general rule extends to grants of crops growing on lands
of the grantors, at the time of the grants.   *Lunn* v. *Thornton*
1 Man. Grang. & Scott, 383, and the authorities there cited.
Not denying these principles, the defendant's counsel contend,
that although the mortgagor could not convey or create a
charge on property to which he had no title nor possession,
actual or potential, yet when he, after the mortgage, added to
his stock in trade  by new purchases, the property vested im-
mediately in the mortgagee, without any other act or convey-
ance on the part of the mortgagor, by virtue of the previous
agreement to that effect contained in the mortgage deed.   One
of the cases cited in support of this argument is *Mitchell* v.
*Winslow*, 2 Story R. 630.   But that case was decided on prin-
ciples of equity, and on the construction of the United States
bankrupt act of 1841, *c.* 9, on which it was held " that (except

in cases of fraud) assignees in bankruptcy take only such rights and interests as the bankrupt himself had, and could himself claim and assert at the time of his bankruptcy; and consequently that they are affected with all the equities which would affect the bankrupt himself, if he were asserting those rights and interests." "It is material here to state," says the learned judge, in giving his opinion, "that the present is not a controversy between a first and second mortgagee as to property acquired and *in esse* after the execution of the first mortgage, and before the execution of the second mortgage, both the mortgagees being purchasers for a valuable consideration. That might at law present a very different question." The decision, therefore, in that case, is of no authority in favor of the defendant in the present case, but seems rather to be an authority impliedly in favor of the plaintiff, who claims under an attachment by a *bonâ fide* creditor of Addison Richardson, the mortgagor. The same remark may be made as to the case of *Fletcher* v. *Morey*, 2 Story R. 555. That was a case in equity, in which the plaintiffs relied on an equitable lien on certain shipments, and the proceeds thereof, in the hands of the defendant, the assignee of James Read & Co., as collateral security for advances made to them by the plaintiffs. And this lien was adjudged valid, as an equitable charge on the property, constituting a trust. But these decisions have but little bearing on the question under consideration. Many things are held by courts of equity to be assignable which are not so held by courts of law. So the legal distinctions between executory and executed contracts are, in many cases, disregarded by courts of equity. But the present case is to be decided according to the principles of the common law. The question is, what are the legal rights of the respective parties to the property in question.

One of the principal cases, relied on by the defendant is that of *Macomber* v. *Parker*, 14 Pick. 497. In that case, it appeared that Hunting & Lawrence were lessees of a brick yard, and entered into a contract with Joseph Evans, by which he was to make for them a certain number of bricks

on certain terms, and to share the profit or loss between them, one half each ; Evans agreeing that Hunting & Lawrence should have full power to retain Evans's part of the bricks or money, to the amount of all sums of money due, or which might become due from him to them. Hunting & Lawrence afterwards assigned to the plaintiffs all their property, including the brick yard, and their rights under the contract with Evans, to which Evans assented, and agreed to act as agent for the assignees. This, unquestionably, was a good assignment, upon the principles already stated. Hunting & Lawrence not only had a potential possession, but they owned the clay of which the bricks were to be made, subject only to the right which Evans might afterwards acquire by his contract. The transmutation of the clay into bricks did not change the right of property ; so that Evans could not acquire an absolute legal title to his share of the bricks until he paid the balance due to the plaintiffs. Upon this view of the case, the question as to the right which might be acquired by the pledging or hypothecation of property was not material to the decision of the case. But if it were otherwise, the doctrine laid down by the learned judge, who delivered the opinion of the court in that case, is not applicable to the present case. For if, when a party agrees to pledge property afterwards to be acquired, and, when it is acquired, delivers over the same to the pledgee, the right of the pledgee would then attach, it does not follow that the same doctrine would apply to a mortgage or sale. A mortgage is an executed contract ; and it is clear that nothing passed by the mortgage deed, in this case, besides the stock in trade which the mortgagor had at the time the mortgage was executed. But in *Abbott* v. *Goodwin*, 7 Shepley, 408, it was held, that where certain goods were mortgaged, and the mortgagor afterwards exchanged some of the goods mortgaged for other goods, the mortgagee thereby acquired a title to the goods taken in exchange. And the case of *Macomber* v. *Parker* was cited by the learned judge who delivered the opinion of the court, as a strong case in support of

this decision, without noticing the distinction between the two cases. We cannot, however, concur in the principles upon which the case of *Abbott* v. *Goodwin* was decided. It was laid down in that case, that " all persons coming in under the mortgagor stand by substitution in his place, equally affected by the contract, whether notified of its existence or not." But the defendant in that case had attached the property as the property of the mortgagor; and though he claimed under him, he might show that the mortgage and the exchange of property were void as to the creditors of the mortgagor, though they might be valid against him by way of estoppel or otherwise. And that case seems to be impliedly, though not expressly, overruled by the case of *Goodenow* v. *Dunn*, 8 Shepley, 86. And we fully concur with Whitman, C. J. in the principles laid down by him in deciding the latter case. In the former case, the mortgage deed had no reference to any property afterwards to be acquired by the mortgagor; and the case seems to have been decided on the assumed fact that the property mortgaged was afterwards exchanged for the property in dispute, with the assent of the mortgagee; but it does not appear that the exchange was made with his assent, or that there was any agreement to this between the mortgagor and the mortgagee. In the case of *Tapfield* v. *Hillman*, 6 Man. & Grang. 245, the construction and legal effect of a similar mortgage were considered; and it was decided, that the mortgagee had no title to any property acquired by the mortgagor subsequently to the date of the mortgage. There was a clause in the mortgage, giving power to the mortgagee, upon non-payment of the debt, to enter into the mortgaged premises, and " to take, possess, hold and enjoy all and every the goods, chattels, effects and premises." And it was held that the mortgagee had no right to take any property but what was on the mortgaged premises at the date of the mortgage. It was however said by Tindal, C. J. that " it would have been very easy so to have framed the power of entry as to make it extend to all effects found upon the premises at the time tha:

such power should be enforced, if such was the intention of the parties." From this the defendant's counsel infer that such a power would have been upheld by the court. And it would, undoubtedly, have been a good defence in that action, if the mortgage had contained such a power; for it was an action of trespass by the mortgagor against the mortgagee.

But although the mortgagee, with such a power, would be justified in seizing the goods of the mortgagor, purchased by him subsequently to the date of the mortgage, it would not vest the property in the mortgagee. And so it was decided in the case of *Lunn* v. *Thornton*, 1 Man. Grang. & Scott, 379, which afterwards came before the same court, and was decided in February 1845. The plaintiff in that case had a bill of sale from the defendant of " all and singular his goods, household furniture, plate, linen, china, stock and implements of trade, and other effects whatsoever, then remaining and being, or which should, at any time thereafter, remain and be in, upon or about his dwelling-house," &c. And it was held that future acquired property would not pass by such a conveyance, unless the grantor should ratify the grant after he had acquired the property therein. The counsel for the defendant relied, among other authorities, on Bacon's Maxims, Reg. 14. *Licet dispositio de interesse futuro sit inutilis, tamen potest fieri declaratio præcedens, quæ sortiatur effectum, interveniente novo actu.* A strong case in support of the rule is cited by Bacon. " If I mortgage land, and after covenant with I. S., in consideration of money which I receive of him, that after I have entered for the condition broken, I will stand seized to the use of the same I. S., and I enter, and this deed is enrolled, and all within the six months, yet nothing passeth; because the enrolment is no new act, but a perfective ceremony of the first deed of bargain and sale; and the law is more strong in that case, because of the vehement relation which the enrolment hath to the time of the bargain and sale, at what time he had nothing but a naked condition." 4 Bacon's Works, (ed. of 1803,) 55.

It was contended on the part of the plaintiff, in *Lunn* v. *Thornton*, that the bringing of the goods on the plaintiff's premises, where they were seized after the execution of the bill of sale, was the new act done by the plaintiff, which gave the declaration contained in the previous bill of sale its effect. But the court held clearly that it could have no such effect. "The new act," Lord Tindal said, "which Bacon relies upon, appears, in all the instances which he puts, to be an act done by the grantor, for the avowed object and with the view of carrying the former grant or disposition into effect." This adjudication, which appears to us to be founded on well established principles, is decisive against the defendant's claim as to the property purchased by the mortgagor after the mortgage. He did not prove, nor offer to prove, any act done by the mortgagor, after the mortgage deed was executed, by which he ratified the same as to the subsequently acquired property. All he offered to prove was, that he had taken possession of the goods before the attachment. But this evidently was irrelevant, as it was held to be by the arbitrator. But if he had proved that the mortgagor had delivered possession to him of the goods in question, to hold the same under the mortgage, that would not have availed him against the plaintiff, although it might be good against the mortgagor. By the Rev. Sts. *c.* 74, § 5, it is provided that "no mortgage of personal property shall be valid against any other person than the parties thereto, unless possession of the mortgaged property be delivered to, and retained by, the mortgagee, or unless the mortgage be recorded by the clerk of the town where the mortgagor resides." Now it is clear, we think, that the record of the mortgage deed is no sufficient notice of a legal incumbrance as to subsequently acquired property ; because, by law, no such property could be sold or conveyed thereby ; and it would furnish no notice that any property would be afterwards purchased, or, if purchased, that any act would be done to ratify the grant in that respect. As to such property, therefore, the mortgage could not be valid, except as between the parties

thereto, unless such goods were delivered by the mortgagor to the mortgagee, with the intention to ratify the mortgage, and the mortgagee retained open possession of the same until the time of the attachment. Whether such proof would be sufficient against creditors, it is not necessary to decide ; as, according to the report of the arbitrator, no such question has been raised.

As to the other questions raised, we think the decisions of the arbitrator were correct, and that upon the whole matter the plaintiff is entitled to recover the estimated value of the goods in question, which were not the property of the mortgagor when the mortgage was executed, and no more. The case, therefore, is to be recommitted to the arbitrator, to ascertain what goods were mortgaged ; unless the parties should agree as to this matter.